UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHAMROCK POWER SALES, LLC,

                           Plaintiff,

      -against-

JOHN SCHERER, PATRICE TILEARCIO,
SCHERER UTILITY SALES, LLC,
and STORM KING POWER SALES, LLC,

                           Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

12 Civ. 8959 (KMK)(JCM)

To the Honorable Kenneth M. Karas, United States District Judge:

       Plaintiff Shamrock Power Sales, Inc. ("Plaintiff") seeks to recover damages from defendants John Scherer, Patrice Tilearcio, Scherer Utility Sales, LLC, and Storm King Power Sales, LLC (collectively "Defendants") for causes of action arising out of defendant John Scherer's employment with Plaintiff. (Docket No. 1). Following entry of summary judgment against the Defendants on five of Plaintiff's claims, this matter was referred to the undersigned to oversee damages discovery and to conduct an inquest on damages. (Docket No. 102). The undersigned oversaw limited discovery on damages, with the final discovery deadline of April 1, 2016. On April 12, 2016, following the conclusion of that discovery, Plaintiff sought an emergency status conference to address what Plaintiff described as Defendants' "continued dissipation of assets." (Docket No. 107). The undersigned held an emergency status conference on April 22, 2016. On April 29, 2016, Plaintiff moved for a preliminary injunction to freeze Defendants' assets. (Docket No. 113). Defendants oppose this motion. (Docket Nos. 122, 123). The Court heard oral argument on May 18, 2016. Based on the evidence presented in the motion papers, I respectfully recommend entry of a preliminary injunction freezing Defendants' assets, excluding reasonable monthly living expenses of $5,785.85.

## I. BACKGROUND

The facts of the dispute between the parties are detailed in Judge Karas' September 30, 2015 Opinion and Order granting summary judgment on five of Plaintiff's claims ("Summary Judgment Order"). (Docket No. 97). Knowledge of those facts is presumed, and the Court only recites those facts necessary to decide this motion.

Plaintiff is a seller of "high voltage power equipment" that "serves as the exclusive representative for manufacturers" of these products in sales deals with utility companies such as Con Edison, Long Island Power Authority, Orange and Rockland Utility, Central Hudson Gas and Electric, National Grid, Public Service Gas and Electric, New York Power Authority, Long Island Railroad, New Jersey Transit, Metro North Railroad, Wesco, and Graybar. (Docket No. 97 at 3-4). In 2004, Plaintiff hired defendant John Scherer ("Defendant Scherer") as a sales representative, providing him with confidential information regarding industry, client, and customer contacts, pricing lists, commission schedules, contracts, and pricing histories, to allow him to sell high voltage power equipment, made by Plaintiff's manufacturer clients, to Plaintiff's utility company customers. (Docket No. 97 at 4, 6). While still employed with Plaintiff, Defendant Scherer and defendant Patrice Tilearcio, his wife, ("Defendant Tilearcio") formed Scherer Utility, and began conducting and soliciting business with at least one of Plaintiff's customers. (*Id.* at 14-18). In September 2012, Defendant Scherer sought and received a $19,528.42 advance from Plaintiff in the form of a check that cleared on October 7, 2012. (*Id.* at 19). Defendant Scherer resigned from the company the following day. (*Id.* at 19-20). When Plaintiff recovered its company-issued laptop and cellphone from Defendant Scherer when he left its employ, it found that client and customer information, license software, e-mail correspondence with proprietary price lists, invoices, orders, and contracts had been deleted. (*Id.*

at 22). Defendant Scherer had copied and retained them for his own use. (*Id.* at 22). On the date Defendant Scherer resigned, he e-mailed some of Plaintiff's clients to inform them that he had resigned but wanted to continue representing them in the New York and New Jersey area through his new company. (*Id.* at 24). Within weeks, Defendant Scherer claimed to be representing five of Plaintiff's former clients. (*Id.* at 23). Since that time, four additional manufacturers have terminated their exclusive contracts with Plaintiff and contracted with Defendant Scherer instead. (*Id.*).

Plaintiff filed the instant complaint on December 10, 2012, alleging fourteen causes of action. (Docket No. 1). On December 11, 2012, Judge Karas entered a temporary restraining order ("TRO") enjoining Defendants Scherer and Scherer Utility Sales, LLC from using or disclosing Plaintiff's confidential, proprietary, or trade secret information, from soliciting or otherwise initiating any further contact or communication with any of Plaintiff's customers, and from using the e-mail address jscherer15@msn.com for commercial purposes. (Docket No. 3 at 3). After the entry of the TRO, Defendants Scherer and Tilearcio contacted Plaintiff's clients and customers and instructed them to communicate with them using Defendant Tilearcio's e-mail address instead of that enjoined by the Court. (Docket No. 97 at 25).

Plaintiff thereafter moved for a preliminary injunction, which was entered on December 27, 2012. (Docket No. 17). The preliminary injunction enjoined Defendants from, *inter alia*, using, disclosing or further converting Plaintiff's confidential proprietary or trade secret information, and soliciting or otherwise initiating any further contact or communications with any of Plaintiff's customers through the use of Plaintiff's trade secrets. (*Id.* at ¶ a). Less than a month later, on January 3, 2013, Defendant Scherer formed a new business, Storm King Power

Sales, LLC, and transferred contracts with manufacturers and accounts receivable to that entity. (Docket No. 97 at 25).

On January 16, 2013, Plaintiff filed a proposed order to show cause why Defendants should not be held in contempt for violating the preliminary injunction. (Docket No. 23). At the show cause hearing on January 31, 2013, Defendants conceded that they violated the preliminary injunction and represented that they were "going out of business totally." (Docket No. 97 at 27). The Court entered a Contempt Order, finding that Defendants were in contempt of the December 27, 2012 preliminary injunction order, and ordered Defendants to comply. (Docket No. 32). Specifically, the Court ordered Defendants to "immediately begin the process of canceling all current contracts with their manufacturers/clients. Those contracts [were] to be terminated as soon as practicable, taking into consideration any notice requirements." (*Id.* at ¶ 4). Additionally, defendants were "directed to pay into an escrow account held by McCarter & English, LLP, all commissions or other funds they ha[d] received from manufacturers/clients since October 1, 2012 or [would] receive in the future . . . until further order of this Court." (*Id.* at ¶ 5).

On September 30, 2015, Judge Karas granted Plaintiff's motion for summary judgment on five claims: breach of fiduciary duty, misappropriation of trade secrets, fraud in the inducement, faithless servant, and unjust enrichment. (Docket No. 97). In recounting the facts of the case, Judge Karas noted that Defendants violated the Contempt Order "by canceling and then reinstating contracts with the same entities with whose contracts the Court directed Defendants to terminate." (*Id.* at 28). Judge Karas noted that Defendants purported to dispute this violation by stating that Defendant Scherer's new entity Storm King Power Sales, LLC was reestablished "without any of Shamrock's previous manufacturers." (*Id.* at 28 n.34). Judge Karas rejected that

argument because "the Contempt Order required Defendants to 'immediately begin the process of canceling all current contracts with their manufacturers/clients,' and did not specify that Defendants need only to cancel contracts with Shamrock's previous manufacturers/clients." (*Id.*). Furthermore, Judge Karas noted that Defendants violated the Contempt Order by receiving commissions and other funds from reinstated contracts and failing to pay those funds into escrow when the Contempt Order did "not limit this requirement to funds earned from Shamrock's previous manufacturers/clients." (*Id.* at 28 n.35).

On March 28, 2016, Plaintiff deposed Defendant Scherer in connection with the damages discovery. (Scherer Depo.[1]). In this deposition, Defendant Scherer asserted that Storm King Power Sales, LLC had between $20,000 and $30,000 in accounts receivable currently pending. (*Id.* at 166). When asked why he had not placed this money into the escrow account, Defendant Scherer represented that he thought that the order to place money in escrow was "associated with the companies that left [Plaintiff] to come with [Defendants]." (*Id.* at 169). Plaintiff's counsel asked Defendant Scherer if he was aware that the Court had ruled differently in 2015, and Defendant Scherer said yes. (*Id.* at 170). Plaintiff's counsel wrote to Defendants' counsel demanding that the $30,000 in accounts receivable be placed into the escrow account. (Docket No. 107-1). Defendants' counsel responded that it was Defendants' interpretation that the Contempt Order only applied to the existing manufacturer/clients at the time of the 2013 order, notwithstanding any contrary statements by the Court in the Summary Judgment Order. (Docket No. 107-2).

Plaintiff wrote to the Court seeking an emergency conference to address this issue, which the Court held on April 22, 2016. At the conference, Defendants conceded that earnings from

---

[1] Refers to the transcript of the deposition of Defendant Scherer, found at Docket No. 109, Exhibit B.

any clients that had originally been clients of Plaintiff, with whom Defendants had reinstated contracts following entry of the Contempt Order, should be placed in the escrow account. The Court ordered the parties to meet and confer to see if they could agree on what existing accounts receivable should be placed in the escrow account, and directed Defendants to provide an accounting of their accounts receivable since the time of Defendant Scherer's deposition. Plaintiff learned at this meet and confer that Defendants had collected an additional $9,950.68 since the deposition. (Docket No. 114 at 1). Nevertheless, at the oral argument on May 18, 2016, Defendants argued that none of Storm King Power Sales, LLC's accounts receivable should be placed in the escrow account.

Plaintiff now seeks a preliminary injunction enjoining Defendants from "concealing, converting, selling, transferring or otherwise dissipating any assets, including cash, stocks, bonds, other personalty or realty, in which they have an ownership, legal or beneficial interest, which may be subject to a monetary judgment rendered in favor of [Plaintiff]." (*Id.* at 7). Specifically, Plaintiff requests that "all amounts due to Storm King as [accounts receivable] be deposited into the escrow account at McCarter & English[,]" and asks the Court to order Defendants to "deposit in escrow all revenues received by Storm King less ($3,967.85) per month to cover necessary and ordinary living expenses." (*Id.*). Plaintiff's calculation of Defendants' necessary and ordinary living expenses is derived from Defendants' checking account statements produced in discovery. (*Id.* at 6). Plaintiff contends that Defendants' monthly mortgage expense of $2,167.85, utility expenses of $1,000, food expenses of $500, and gas expense of $300, add up to $3,967.85 in necessary monthly living expenses. (*Id.*).

In response, Defendants continue to assert their narrow reading of the Contempt Order, previously rejected by Judge Karas in the Summary Judgment Order. (Docket No. 123). They

6

also contend that Plaintiff has known that Defendants were engaged in these business transactions, but took no action. (*Id.* at 3). Defendants further argue that New York Civil Practice Law and Rules ("CPLR") Section 5205(d)(2) provides an income exemption to collection of a judgment, and therefore that Plaintiff should only be able to freeze ten percent of Defendants' income under this provision. (*Id.*). Finally, Defendants maintain that they are not willfully dissipating assets, but are merely using their income to cover their reasonable living expenses. (*Id.*). In support of what their reasonable living expenses are, Defendants point to their interrogatory responses from July 8, 2014, in which they claim $7,125 in personal monthly expenses, including utilities, car insurance, mortgage, credit card and other debt payments, medical bills, food, car maintenance, tolls, and fuel, (Docket No. 122-4). Defendants additionally declare a monthly health insurance expense of $1,218, (Docket No. 122 at ¶ 16), and business expenses of $1,970, (Docket No. 122-6). In the aggregate, Defendants are claiming $10,313 in monthly expenses.

## II. DISCUSSION

### A. Legal Standards

As an initial matter, "on a motion for a preliminary injunction, where essential facts are in dispute, there must be a hearing . . . and appropriate findings of fact must be made." *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.), *amended*, 890 F.2d 569 (2d Cir. 1989) (citing *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747 (2d Cir. 1987)). However, "*Fengler* does not stand for the proposition that a hearing must be held in all preliminary injunction cases." *Id.* No hearing is necessary where "the prior hearings and affidavits, and the court's findings supporting the earlier injunction, provide[] an adequate basis for the court's decision . . . [and] the most significant factors on which the injunction [is] based

would have remained essentially unchanged by any additional evidence." *Drywall Tapers & Pointers of Greater New York, Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasters & Cement Masons Int'l Ass'n*, 954 F.2d 69, 76-77 (2d Cir. 1992) (quotation marks, citation and original alterations omitted).

Plaintiff asserts that Rule 65 of the Federal Rules of Civil Procedure ("Rule 65"), which addresses preliminary injunctions and restraining orders, is the appropriate mechanism for the Court to freeze Defendants' assets following the entry of summary judgment. (Docket No. 114). The Second Circuit has affirmed the use of a post-judgment injunction on a claim for money damages where the judgment debtor sought to evade payment to the judgment creditor. *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996).  Other jurisdictions have similarly approved the imposition of a preliminary injunction at the post-judgment stage. *See Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*, No. 8:11-CV-1468-T-33TBM, 2015 WL 9673589, at *3 n.3 (M.D. Fla. Dec. 8, 2015) (collecting cases).  Courts within the Second Circuit have used both Rule 64 of the Federal Rules of Civil Procedure ("Rule 64") and Rule 65 to issue post-judgment injunctions to secure assets. *See Tiffany (NJ) LLC v. Forbse*, No. 11 CIV. 4976 NRB, 2015 WL 5638060, at *4 (S.D.N.Y. Sept. 22, 2015) (Rule 65); *Sequa Capital Corp. v. Nave*, 921 F. Supp. 1072, 1075 (S.D.N.Y. 1996) (Rule 64).

A party moving for a preliminary injunction under Rule 65 must demonstrate "(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *MONY Grp., Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143 (2d Cir. 2004) (citation and quotation marks omitted).  Generally, an injury that can be redressed through a monetary award

is not irreparable. *See, e.g., Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113-14 (2d Cir. 2003). However, there is an exception where there is a "showing of intent to frustrate any judgment on the merits." *Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04 CIV 7395 RWS, 2006 WL 3354139, at *4-5 (S.D.N.Y. Nov. 20, 2006); *see also In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) (enjoining party found to have engaged in "numerous" and "substantial efforts to hide and secrete assets").

On the other hand, Rule 64 provides that "throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. In New York, CPLR § 5229 provides that "upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained with the same effect as if a restraining notice had been served upon him after judgment." N.Y. Civ. Prac. Law and Rules § 5229.[2] "Other than having received a favorable verdict or decision, there are no prerequisites to obtaining the relief provided in CPLR 5229. It is the court's discretion whether to grant relief and the manner and limitations in which relief is granted." *Sequa Capital Corp.*, 921 F. Supp. at 1076 (citation omitted).

CPLR § 5205(d)(2), however, provides an income exemption from collection of "ninety per cent of the earnings of the judgment debtor for his personal services rendered within sixty days before . . . a motion is made," with the exception of "such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents." N.Y. Civ. Prac. Law and Rules § 5205(d)(2). CPLR § 5205(d)(2) does not automatically protect 90% of Plaintiff's assets from collection. *See Cadle Co. v. Newhouse*, 20 F. App'x. 69, 72-73 (2d Cir.

---

[2] Plaintiff is not seeking relief under this provision. (Docket No. 127 at 4).

2001). "This provision is intended to shield that portion of a debtor's income that is used to pay for the reasonable living expenses of the debtor's family." *Id.* Section 5205(d)(2) makes clear "that while a debtor may exempt up to 90% of his earning, a court may choose to protect a lesser amount to the extent that the debtor's earnings exceed that required to pay for reasonable living expenses. Therefore, New York courts have, in their discretion, awarded judgment creditors more than 10% of the judgment debtor's earnings." *Id.* at 73 (citations omitted). "[T]he appropriate inquiry is the quantum necessary for the debtor's and his family's 'reasonable requirements' for support, keeping in mind that 'no man should be permitted to live at the same time in luxury and in debt.'" *In Re Portnoy*, 201 B.R. 685, 693 (Bankr. S.D.N.Y. 1996) (citations omitted).

## B. Analysis

First, I find that no hearing is required to decide Plaintiff's motion. Judge Karas already held hearings in advance of entering the preliminary injunction and the Contempt Order. (Docket Nos. 3, 31). Judge Karas also recounted the history of the dispute between the parties in the Summary Judgment Order, and rejected Defendants' objections to the facts upon which he relied. (Docket No. 97). Additionally, the parties have submitted affidavits and documentation in support of their positions regarding this motion. (Docket Nos. 122, 125, 126). At the May 18, 2016 oral argument, following Plaintiff's statement that a hearing was not necessary, Defendants replied that a hearing would be useful to determine Defendants' reasonable monthly expenses. However, there is no dispute as to the facts of Defendants' monthly expenditures. Instead, there is a legal question as to which of those expenses are reasonable and should be excluded from the freezing of Defendants' assets. Therefore, I find that the factors on which the injunction is based would be unchanged by additional evidence, and, therefore, a hearing is not necessary.

Next, I find that Plaintiff has made a "showing of [Defendants'] intent to frustrate any judgment on the merits." *Sea Carrier Corp.*, 2006 WL 3354139, at *4-5. Since the entry of the TRO on December 11, 2012, Defendants have taken numerous actions to elude the enjoinment of their use of Plaintiff's trade secrets for their own financial gain, and have avoided depositing money into the Court-ordered escrow account. After entry of the TRO, Defendants began using a different e-mail address to contact Plaintiff's clients and customers. (Docket No. 97 at 25). Then, following entry of the preliminary injunction, Defendants formed a new entity and transferred contracts and accounts receivable to that entity. (*Id.*). When that resulted in a show cause hearing as to why the Court should not issue a Contempt Order, Defendants represented to the Court that they would be going out of business and canceling their contracts. (*Id.* at 27). Nevertheless, shortly after canceling the contracts, they reinstated them with the same entities. (*Id.* at 28). Now, Defendants argue that because the parties and the Court believed in February 2013 that Defendants would be going out of business entirely, the language of the Contempt Order could not have covered business that Defendants entered into following that date. (Docket No. 109). Defendants make this argument despite the fact that Judge Karas made clear in his September 30, 2015 Summary Judgment Order that the Contempt Order was not limited to contracts with, or funds earned from, Plaintiff's previous manufacturers/clients. (Docket No. 97 at 28 nn.34-35). During the emergency conference on April 22, 2016 regarding the dissipation of assets, Defendants conceded that earnings from any reinstated contracts with clients that had originally been clients of Plaintiff would fall under the Contempt Order. Nonetheless, following a Court-ordered meet and confer, Defendants still declined to deposit any funds into the escrow account. Accordingly, I find that there is sufficient evidence of Defendants' intent to frustrate a judgment on the merits. Defendants have repeatedly tried to avoid the Court's orders enjoining

them from continuing to do business through the use of Plaintiff's trade secrets and directing Defendants to deposit money into the escrow account. Therefore, I respectfully recommend that the Court enter a preliminary injunction to prevent Defendants from dissipating their assets based on Plaintiff's showing of irreparable harm.[3]

Plaintiff and Defendants agree that, should an injunction be entered, Defendants should retain a monthly amount of income from their accounts receivable to cover necessary living expenses. Plaintiff contends that $3,967.85 is sufficient for Defendants to cover their mortgage, utilities, food, and gas expenses. (Docket No. 114 at 6). In response, Defendants assert that $7,125 in personal monthly expenses, (Docket No. 122-4), in addition to the added monthly health insurance expense of $1,218, (Docket No. 122 at ¶ 16), are reasonable. The Court does not adopt either amount. I find that the following personal expenses are reasonable based on the assertions and documentation provided by both parties: $2,167.85 for Defendants' mortgage payment, $1,000 for Defendants' utilities (electric, cable, phone, fuel, water, and sewer bills), $1,218 for health insurance, $600 for food, and $300 for gas, tolls and other car maintenance. Additionally, the Court understands that Defendants are responsible for paying back numerous debts, and recommends allowing Defendants to retain a discretionary $500 to make minimum payments and cover any other unexpected expenses. In total, the Court finds that $5,785.85 of Defendants' personal monthly expenses are necessary and should be excluded from the injunction. *See, e.g., GE Capital Commercial Inc. v. Wright & Wright Inc.*, No. CIV.A. 3:09-CV-572-L, 2009 WL 1148235, at *6 (N.D. Tex. Apr. 28, 2009) (allowing $5,000 for basic living expenses and necessities). The Court does not recommend allowing Defendants to retain a budget for business expenses.

---

[3] Plaintiff has inherently shown success on the merits, as its motion for summary judgment has been granted. (Docket No. 97).

The Court notes that the result would not differ if Plaintiff had sought the freezing of Defendants' assets through Rule 64. Had Plaintiff sought relief through CPLR § 5229, under the facts and circumstances of this case, I recommend that the amount to be exempted is "the quantum necessary for the debtor's and his family's reasonable requirements for support." *Cadle Co.*, 20 F. App'x at 72-73. The amount in excess of that, even if 90% of Defendants' income, should be placed in escrow pending a decision on the amount of damages Defendants owe to Plaintiff.

## III. CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Plaintiff's motion for a preliminary injunction to freeze Defendants' assets should be granted. I recommend that Defendants be enjoined from concealing, converting, selling, transferring or otherwise dissipating any assets, including cash, stocks, bonds, other personalty or realty, in which they have an ownership, legal or beneficial interest, which may be subject to a monetary judgment rendered in favor of Plaintiff. Specifically, the Court should order Defendants to deposit all amounts due to them as accounts receivable and all revenues into the escrow account at McCarter & English, LLP, less $5,785.85 per month to cover necessary and ordinary living expenses.[4]

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for computing time). A party may respond to another party's objections within fourteen (14) days

---

[4] These amounts are inclusive of any and all accounts receivable and revenues currently in Defendants' possession, and those which are forthcoming in the future.

after being served with a copy. Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated: June 14, 2016
       White Plains, New York

**SO ORDERED:**

*[signature]*
JUDITH C. McCARTHY
United States Magistrate Judge