UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAMROCK POWER SALES, LLC,

                                    Plaintiff,

        v.

JOHN SCHERER, et al.,

                                    Defendants.

Case No. 12-CV-8959 (KMK) (JCM)

ORDER ADOPTING R&R IN PART

KENNETH M. KARAS, District Judge:

        Shamrock Power Sales, LLC ("Plaintiff") brings this action against John Scherer, Patrice

Tilearcio, Scherer Utility Sales, LLC, and Storm King Power Sales, LLC ("Defendants"),

alleging, among other things, that Defendants misappropriated confidential trade secrets. (*See*

Second Am. Compl. (Dkt. No. 41).)  Partial summary judgment was entered against Defendants

on September 30, 2015.  (*See* Op. & Order ("Op. on Partial Summ. J.") (Dkt. No. 97).)  The case

was referred to Magistrate Judge Judith C. McCarthy ("Judge McCarthy") pursuant to 28 U.S.C.

§ 636(b)(1) for the purpose of determining damages. (*See* Order Referring Case to Magistrate

Judge (Dkt. No. 102).)  Plaintiff thereafter moved for an assessment of damages, (*see* Pl.'s Mot.

for Assessment of Damages (Dkt. No. 115)), and for a preliminary injunction freezing

Defendants' assets, (*see* Pl.'s Mot. for Prelim. Inj. To Freeze Defs.' Assets ("Mot. for PI") (Dkt.

No. 113)).  On June 15, 2016, Judge McCarthy issued a Report and Recommendation (the

"R&R") recommending that the Court grant Plaintiff's Motion for Preliminary Injunction to

Freeze Defendants' Assets. (Dkt. No. 136.)  Plaintiff's motion for an assessment of damages is

still pending.  Following an extension of their time to respond, (*see* Memo Endorsement (Dkt.

No. 139)), Defendants filed their objections to the R&R on July 8, 2016, (Dkt. No. 140 ("Defs.'

Objs.")).  Plaintiff filed its response to the objections on July 28, 2016.  (Dkt. No. 145 ("Pl.'s

Resp.").)  For the reasons discussed below, the Court adopts the R&R in part and modifies it in

part.

I.  Discussion

A.  Standard of Review

A district court reviewing a report and recommendation "may accept, reject, or modify, in

whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C.

§ 636(b)(1).  Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(1), parties may

submit objections to the magistrate judge's report and recommendation.  The objections must be

"specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of

the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, as Defendants

have here, the district court reviews de novo the portions of the report and recommendation to

which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court

"may adopt those portions of the . . . report [and recommendation] to which no 'specific written

objection' is made, as long as the factual and legal bases supporting the findings and conclusions

set forth in those sections are not clearly erroneous or contrary to law."  *Eisenberg v. New Eng.

Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P.

72(b)(2)).  "[F]ailure to object timely to a magistrate's report operates as a waiver of any further

judicial review of [that] decision."  *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir.

2008) (internal quotation marks omitted).  Moreover, objections that are "merely perfunctory

responses argued in an attempt to engage the district court in a rehashing of the same arguments

set forth in the original petition will not suffice to invoke de novo review of the magistrate's

2

recommendations." *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (same).

### B. Analysis

The Court adopts the recitation of facts set forth by Judge McCarthy in the R&R, (R&R 2–7), and assumes the Parties' familiarity with it. The Court will repeat only those facts relevant to the consideration of Defendants' objections.

Plaintiff seeks this preliminary injunction pursuant to Federal Rule of Civil Procedure 65. (*See* Mot. for PI 1.) A party seeking a preliminary injunction under Rule 65 must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotation marks omitted). "Irreparable harm" in this context means "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003). However, the general rule that monetary harm is not irreparable has two exceptions: (1) cases "involving obligations owed by insolvents," *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999), and (2) where there has been a "showing of intent to frustrate any judgment on the merits," *Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04-CV-7395, 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006) (citing, inter alia, *Republic of Phillipines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985)).

Defendants raise four objections to the R&R: (1) that Judge McCarthy erred in calculating Defendants' personal living expenses and in refusing to permit Defendants to retain

3

an additional sum as a budget for business expenses, (2) that Judge McCarthy erred in

concluding that Defendants had reinstated contracts with Plaintiff's clients, (3) that Judge

McCarthy erred in concluding that Plaintiff will suffer irreparable harm if the injunction is not

entered, and (4) that Judge McCarthy erred in concluding that Defendants intended to frustrate a

judgment on the merits. (*See* Defs.' Objs.)  Plaintiff responds that Defendants' objections

merely rehash the arguments made in the original briefing and thus need not be addressed by the

Court. (Pl.'s Resp. 2.)  Before addressing the arguments of the Parties, the Court will first

consider whether it has the equitable power to enter the proposed preliminary injunction.

### 1. Equitable Power of the Court

The relief sought here is a preliminary injunction pursuant to Federal Rule of Civil

Procedure 65. (*See* Mot. for PI 1.)  This is not an application for postjudgment relief—although

partial summary judgment has been rendered in favor of Plaintiff, (*see* Op. on Partial Summ. J.),

no judgment has been entered. And a preliminary injunction under Rule 65 would be an

inappropriate mechanism for seeking postjudgment relief, as the execution of judgments is

governed by Rule 69. *See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade

Servs., Inc.*, 295 F. Supp. 2d 366, 377 (S.D.N.Y. 2003) ("Where a federal court has independent

grounds for jurisdiction, it can enforce a judgment using any of the procedures afforded under

state law." (citing Fed. R. Civ. P. 69(a)); *see also Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d

199, 204 (2d Cir. 1966) ("It is hornbook law that 'the general purpose of a preliminary injunction

is to preserve the status quo *pending final determination of the action.*'" (emphasis added)

(quoting 7 James Wm. Moore et al., *Federal Practice* ¶ 65.04(1) (2d ed. 1955))).

The authority of a court to issue a preliminary injunction under Rule 65 derives from

"traditional principles of equity jurisdiction" and is "not altered by [Rule 65]." *Grupo Mexicano*

*de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999) (alteration in original) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2941 (2d ed. 1995)). Accordingly, the Court may order relief under Rule 65 only to the extent such relief "was traditionally accorded by courts of equity." *Id.* at 319.

In *Grupo Mexicano*, the Supreme Court considered whether a federal district court had authority under Rule 65 to "issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest [was] claimed." *Id.* at 310. The plaintiffs, seeking payment on notes issued by the defendants, had requested and were granted a preliminary injunction pursuant to Rule 65 enjoining the defendants from transferring their interest in a different set of securities. *Id.* at 311–12. The defendants appealed to the Second Circuit and then to the Supreme Court, arguing that the district court lacked the power to issue such an injunction. *Id.* at 313.

Recognizing that a district court's injunctive power under Rule 65 derives from its inherent equitable powers, the Supreme Court held that under traditional principles of equity, a district court has no inherent authority under Rule 65 "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication of [a] contract claim for money damages." *Id.* at 333. The Court vacated the preliminary injunction, reasoning that "such a remedy was historically unavailable from a court of equity." *Id.* The holding was limited to claims for money damages in which a plaintiff seeks a preliminary injunction to prevent the defendant "from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310.

The Supreme Court took care to distinguish its holding from earlier cases. Most notably, in *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), the Court held that the district

5

court had equitable power to freeze certain assets of the defendant because "there were allegations that [the defendant] was insolvent and its assets in danger of dissipation or depletion." *Id.* at 290. In so holding, the Court noted that "[t]he principal objects of the suit are rescission of the . . . contracts and restitution of the consideration paid." *Id.* at 289. In *Grupo Mexicano*, the Court distinguished *Deckert* by pointing out that the plaintiffs in *Deckert* sought equitable relief, clarifying that "[t]he preliminary relief available in a suit seeking *equitable* relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a *legal* debt." *Grupo Mexicano*, 527 U.S. at 325 (emphasis added). Its holding in *Grupo Mexicano*, the Court noted, merely reiterated the principle established in earlier cases that an injunction seeking relief "lying wholly outside the issues in the suit" had never "been thought justified in the long history of equity jurisprudence." *Id.* at 326–27 (internal quotation marks omitted) (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220, 222–23 (1945)).

Consequently, the question of whether a court may afford the type of preliminary relief sought here turns on whether the injunction acts "in aid of the recovery" sought in equity. *Deckert*, 311 U.S. at 289. To that end, courts have devised methods for determining whether a preliminary injunction is within the power of a court. The Fourth Circuit, for example, has developed a two-part test, whereby the court first determines "whether the[] claims are cognizable in equity." *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 497 (4th Cir. 1999). Next, the court asks whether the preliminary injunction "is a reasonable measure to preserve the status quo in aid of the claims in suit." *Id.* at 498. The District of Massachusetts has adopted a similar test. *See Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 77 F. Supp. 2d 199, 204 (D. Mass. 1999) (asking whether "the claims in the suit seek cognizable relief in

6

equity against specific assets of the defendant" before considering whether "a preliminary injunction freezing these assets [would] be a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed" (internal quotation marks omitted)).

The Second Circuit, while not adopting a formulaic inquiry, has offered some guidance. In *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014), the Second Circuit considered whether a district court had the authority to enter a preliminary injunction freezing the defendants' assets where the plaintiffs sought an "accounting" of the defendants' profits pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq. 768 F.3d at 130. The Second Circuit held that in such a circumstance, *Grupo Mexicano* does not prohibit a district court from entering the preliminary injunction. *Id.* at 131. The Second Circuit examined common law history and noted that "the common law action of 'account' is one of the earliest examples of a restitutionary action in equity, imposing on a defendant the obligation to disclose and return profits from the use of the plaintiff's property." *Id.* at 131 (citing 3 W. Holdsworth, *A History of English Law* 426–28 (3d ed. 1923); Willard Titus Barbour, *The History of Contract in Early English Equity*, *in* 4 *Oxford Studies in Social and Legal History* 13, 13–14 (Paul Vinogradoff ed., 1914)). The court also explained that "the ancient remedies of accounting, constructive trust, and restitution have compelled wrongdoers to 'disgorge'—i.e., account for and surrender—their ill-gotten gains for centuries." *Id.* at 132 (internal quotation marks omitted) (quoting *S.E.C. v. Cavanagh*, 445 F.3d 105, 119 (2d Cir. 2006)). The Second Circuit concluded that because a claim for restitution was traditionally a claim for equitable relief and because the preliminary injunction sought was "ancillary" to the plaintiffs' claim for "final equitable relief," *Grupo Mexicano* provided no impediment to the preliminary injunction at issue. *Id.* at 131–32. Its decision, the court said, accorded with the views of three other circuits. *See id.* at 132 (citing *Animale Grp. Inc. v.*

7

*Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 562 (9th Cir. 1992)).

Here, Plaintiff has made a number of claims against Defendants. The Court has granted summary judgment in favor of Plaintiff on five of them: Count III for breach of fiduciary duty, Count V for misappropriation of trade secrets, Count X for fraud in the inducement, Count XI for faithless servant, and Count XIV for unjust enrichment. (*See* Op. on Partial Summ. J. 2.) For these and other claims, Plaintiff has asked for, among other things, forfeiture of compensation, lost profits, and compensatory damages. (Second Am. Compl. 34.) Thus, there is little doubt that Plaintiff is seeking at least some equitable relief here. Plaintiff, for example, asks for an accounting of the monies obtained through Defendants' wrongful actions. (*Id.*) The Second Circuit in *Gucci* held that this type of relief is equitable in nature. 768 F.3d at 130. And Plaintiff's claim for disgorgement of profits is also equitable in nature. *See Cavanagh*, 445 F.3d at 119 ("[C]hancery courts possessed the power to order equitable disgorgement in the eighteenth century . . . ."). It is less clear, however, that the equitable relief sought by Plaintiff derives from the claims for which summary judgment has been granted. This matters because outside of Plaintiff's success on partial summary judgment, there has been no effort to show a likelihood of success on the merits on the remaining claims. (*See* Letter from Pamela J. Moore, Esq., to Court (Apr. 29, 2016) ("Apr. 29 Pl. Ltr.") (Dkt. No. 114); R&R 12 n.3.) Thus, if the equitable relief sought relates only to claims not addressed in the Court's summary judgment order, Plaintiff has not met its burden of showing a likelihood of success on the merits.[1]

---

[1] Judge McCarthy did not examine whether Plaintiff had shown "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief," an alternate ground for

Accordingly, the Court will examine each count in turn to determine whether the count seeks equitable relief, considering "'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (quoting *Reich v. Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994)). If a count that Plaintiff prevailed on at summary judgment seeks equitable relief, the Court must then determine whether the proposed preliminary injunction would "be a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Fairview*, 77 F. Supp. 2d at 204.

First, Plaintiff brings a claim for breach of fiduciary duty against Defendant Scherer. (Second. Am. Compl. ¶¶ 90–93.) As a "general rule, breach of fiduciary duty claims were historically within the jurisdiction of the equity courts." *Pereira v. Farace*, 413 F.3d 330, 348 (2d Cir. 2005) (internal quotation marks omitted); *see also* 48A Am. Jur. 2d *Labor and Labor Relations* § 1155 (2016) (noting that claims for breach of fiduciary duty are typically "equitable in nature"). Though the claim is equitable, the Court must also consider what type of relief is sought here. *See Great-West Life*, 534 U.S. at 213. The Second Amended Complaint alleges only that Scherer's breach of fiduciary duty has caused Plaintiff to suffer "serious and irreparable harm and damages." (*Id.* ¶ 93.) Typically, "an action for money damages was 'the traditional form of relief offered in the courts of law,'" *Chauffeurs, Local No. 391 v. Terry*, 494 U.S. 558, 571 (1990) (quoting *Curtis v. Loether*, 415 U.S. 189, 196 (1974)), and therefore did not sound in equity. The two exceptions to this general rule are where the damages "are restitutionary, such

---

granting a preliminary injunction. *Citigroup Global Markets*, 598 F.3d at 35 (internal quotation marks omitted). However, Plaintiff made no mention of this alternative standard in its response to Defendants' objections, and there is little evidence in the record that the hardships of the litigation tip "decidedly" toward Plaintiff.

as in 'action[s] for disgorgement of improper profits,'" or where the monetary award is "incidental to or intertwined with injunctive relief." *Id.* at 570–71 (internal quotation marks omitted) (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987)). The damages sought for Scherer's breach of fiduciary duty are not restitutionary in that they do not seek disgorgement of improper profits, and nor are they "incidental to or intertwined with injunctive relief," as no injunctive relief is sought with respect to Scherer's breach of fiduciary duty. Accordingly, the relief sought by Plaintiff on this count cannot vest the Court with the power to issue the proposed preliminary injunction. *See JSC Foreign Econ. Ass'n Technostroyexport*, 295 F. Supp. 2d at 389 ("A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by *Grupo Mexicano*.").

Next, Plaintiff brings a claim for misappropriation of trade secrets. (Second Am. Compl. ¶¶ 100–10.) Courts in the Second Circuit have recognized that whether a claim for misappropriation of trade secrets is equitable or legal depends on the relief the plaintiff seeks. *See LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 192 (S.D.N.Y. 2002) ("[T]rade secret misappropriation claims are equitable in nature only when plaintiffs are seeking injunctive relief."); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns Ltd.*, 891 F. Supp. 935, 943 (S.D.N.Y. 1995) ("[The] [p]laintiff's claim for damages for trade secret misappropriation is essentially legal in nature . . . ."), *aff'd in part and vacated and remanded in part*, 118 F.3d 955 (2d Cir. 1997). Here, Plaintiff alleges that because of Defendants' misappropriation of trade secrets, Plaintiff is "entitled to injunctive relief and the recovery of compensatory damages, punitive damages, special damages and attorneys' fees." (*Id.* ¶ 110.) As above, claims for normal monetary damages do not sound in equity, and therefore Plaintiff's request for compensatory, punitive, and special damages does not vest the Court with the power to issue the proposed preliminary

injunction. *See LinkCo*, 232 F. Supp. 2d at 192 ("Because [the plaintiff] is seeking damages, its misappropriation claim is an action at law . . . ."). Injunctive relief, by contrast, is a "traditional equitable remed[y]." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015); *see also Eden Foods, Inc. v. Baksht*, No. 14-CV-3222, 2015 WL 800240, at \*2 (E.D.N.Y. Feb. 25, 2015) ("Claims for injunctive relief . . . are equitable in nature . . . ."). While Plaintiff does not articulate what "injunctive relief" is sought for this specific count, the complaint elsewhere indicates that Plaintiff seeks to enjoin Defendants from using or disclosing Plaintiff's trade secret information. (*See* Second Am. Compl. ¶ 160.) This claim thus does seek some equitable relief. However, the proposed preliminary injunction would not act in aid of the equitable relief sought—a preliminary injunction freezing assets cannot be entered where there is no "lien or equitable interest" in the assets sought to be frozen. *Grupo Mexicano*, 527 U.S. at 310. Because there is no relationship between the preliminary injunction sought and the equitable relief sought, the Court is powerless to freeze Defendants' assets with respect to this claim. *Cf. Gucci*, 768 F.3d at 131 (noting that the preliminary injunction was proper because it was "ancillary to the final relief"); *Algonquin Power Corp., Inc. v. Trafalgar Power Inc.*, No. 00-CV-1246, 2000 WL 33963085, at \*17 (N.D.N.Y. Nov. 8, 2000) (granting injunctive relief where "the relief now sought is closely aligned with the ultimate relief available to [the] plaintiffs should they prevail in this action, and the asset involved is integrally part of the lawsuit, thereby establishing the required nexus to support injunctive relief").

Plaintiff next brings a claim for fraud in the inducement related to Scherer's request for an advancement. (Second Am. Compl. ¶¶ 130–35.) Whether the claim sounds in equity or law is ambiguous. While "fraud is an original ground of equitable jurisdiction," *Whitcomb v. Shultz*, 223 F. 268, 274 (2d Cir. 1915), "[c]ourts of law and courts of equity as a general rule ha[d]

11

concurrent jurisdiction in cases of fraud," *id.* Turning to the relief sought here, Plaintiff states only that "[a]s a result of Scherer's intentionally false representations, [Plaintiff] has been damaged." (Second Am. Compl. ¶ 135.) Because Plaintiff seeks only monetary damages with respect to this claim, the relief sought is at law, and thus the proposed preliminary injunction cannot be entered with respect to this count.

Plaintiff also brings a claim that Scherer acted as a faithless servant. (*See id.* ¶¶ 136–141.) Under New York law, "[t]he faithless servant doctrine is an alternative to a claim for breach of fiduciary duty." *Webb v. RLR Assocs., Ltd.*, No. 03-CV-4275, 2004 WL 555699, at *2 (S.D.N.Y. Mar. 19, 2004). Accordingly, unless the underlying claim relates to a breach of contract, fraud, fraudulent transfer, negligence, or gross negligence, a claim under the faithless servant doctrine is typically a claim in equity. *Id.* For relief, Plaintiff seeks "recovery of all compensation paid to Scherer from at least October 2011 through October 2012." (Second Am. Compl. ¶ 141.) This relief is squarely equitable. Claims for money damages, though ordinarily sounding in law, are equitable if they are restitutionary, "as in actions for disgorgement of . . . . money wrongfully held." *Chauffeurs*, 494 U.S. at 570–71 (alteration and internal quotation marks omitted). Plaintiff seeks repayment of money wrongfully held by Scherer, and thus the relief sought is restitutionary. *See, e.g., Swan Brewery Co. v. U.S. Trust Co. of N.Y.*, 143 F.R.D. 36, 41 (S.D.N.Y.) (holding that relief was restitutionary because the plaintiff "[sought] the return of the retained portion of the [o]verpayment"), *reargument granted*, 145 F.R.D. 40 (S.D.N.Y. 1992); *see also Webb*, 2004 WL 555699, at *2 (noting that "disgorgement of profits" in a faithless servant claim is equitable relief). And, as the Second Circuit has held, claims seeking restitution sound in equity and thus fall outside the scope of *Grupo Mexicano. See Gucci*, 768 F.3d at 131 ("[T]he common law action of 'account' is one of the earliest examples of a

12

restitutionary action in equity . . . ."). Plaintiff's claim here seeking restitution of the compensation paid to Scherer from October 2011 to October 2012 is thus equitable in nature.

The Court must then determine whether the proposed preliminary injunction would act in aid of the claim, considering whether a nexus exists between the injunctive relief and the ultimate relief sought. *See Rahman*, 198 F.3d at 496–97. Because Plaintiff is seeking monetary relief in the form of restitution, there is little question that freezing assets that may be the subject of that relief would act in aid of the ultimate relief sought. *See, e.g.*, *id.* at 498 ("The injunction in this case freezes the defendants' assets, prohibiting the defendants from transferring them outside of the ordinary course of business. . . . It is readily apparent that . . . these mandates are designed to enable or to aid the district court in giving the relief requested in the complaint." (internal quotation marks omitted)). Accordingly, the Court is vested with power to issue a preliminary injunction freezing assets that may be subject to a judgment in Plaintiff's favor on the claim under the faithless servant doctrine.

Plaintiff's final claim relevant here is its claim for unjust enrichment against all Defendants. Unjust enrichment claims are rooted in equity. *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 963 (2d Cir. 1998) (describing unjust enrichment as a claim for "equitable recovery"); *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997) (same); *Webb*, 2004 WL 555699, at *3 (noting that claims for unjust enrichment are "grounded in equity"). For this claim, Plaintiff avers that "[e]quity and good conscience demand that . . . Defendants not retain the $46,250 [paid to Scherer] and that those funds instead be repaid to [Plaintiff]." (Second Am. Compl. ¶ 158.) Like Plaintiff's claim under the faithless servant doctrine, claims for restitution under a theory of unjust enrichment sound in equity. *See Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009) (describing restitution "as the equitable

13

remedy of unjust enrichment"); *see also Grupo Mexicano*, 527 U.S. at 325 (describing "rescission of the contracts and restitution" as "equitable remedies"). And, like Plaintiff's claim for restitution under the faithless servant doctrine, a preliminary injunction, narrowly drawn, could serve to act in aid of the ultimate relief sought.

Having considered the five claims that Plaintiff prevailed on at partial summary judgment, the Court finds two that could serve as the basis for the preliminary injunction sought here. The Court now considers the scope of the preliminary injunction.

The preliminary injunction proposed by Plaintiff enjoins Defendants "from concealing, converting, selling, transferring or otherwise dissipating any assets, including cash, stocks, bonds, other personalty or realty, in which they have an ownership, legal or beneficial interest, which may be subject to a monetary judgment rendered in favor of Shamrock." (Apr. 29 Pl. Ltr. 7.) The preliminary injunction suggested by Judge McCarthy is similarly drawn. (R&R 13.) However, this preliminary injunction, as formulated, is overbroad, as it encumbers assets that may be subject to a judgment in favor of Plaintiff solely on the legal claims, which this Court lacks power to do. Accordingly, the preliminary injunction must be modified to limit its scope to those claims that seek equitable relief, and must be tailored so as to act "in aid of" the ultimate relief sought. *Deckert*, 311 U.S. at 289.

For its claim under the faithless servant doctrine, Plaintiff seeks "all compensation paid to Scherer from at least October 2011 through October 2012." (Second Am. Compl. ¶ 141.) Documents submitted at summary judgment indicate that Scherer was paid $131,864.88 in compensation from October 2011 through his termination in October 2012. (*See* Decl. of Elizabeth Mott Smith in Supp. of Mot. for Partial Summ. J. Ex. L (Dkt. No. 71).) Because Scherer's assets may be frozen only to the extent they are the target of a claim for equitable

14

relief, *see Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11-CV-3489, 2013 WL 1915330, at *4 (S.D.N.Y. May 9, 2013) (limiting asset freeze to those assets traceable to the equitable claim); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283, 2012 WL 5265727, at *4 (S.D.N.Y. Oct. 24, 2012) (same), the preliminary injunction must be modified to reflect that none of Scherer's assets in excess of $131,864.88 should be frozen.

The unjust enrichment claim seeks a more limited amount of restitution of $46,250. (Second Am. Compl. ¶ 158.) However, because the $46,250 sought under this claim is part of the compensation paid to Scherer from October 2011 to October 2012 and is thus already included in the $131,864.88 sought under the faithless servant claim, no additional asset freeze is necessary to secure the equitable relief sought under the unjust enrichment claim.

Notably, the unjust enrichment claim is asserted against all Defendants, whereas the faithless servant claim, which targets a larger amount of assets, is asserted only against Scherer. (*Compare id.* ¶¶ 136–41, *with id.* ¶¶ 156–58.) The evidence in the record, however, indicates that Scherer's assets and expenses are shared with all Defendants, (*see, e.g.*, Decl. of John Scherer in Opp. to Mot. for Prelim. Inj. To Freeze Defs.' Assets Ex. D ("Defs.' Interrog. Resps.") 11–12 (Dkt. No. 122)), and that depletion of one Defendant's assets would affect recovery against all Defendants. The Court therefore finds that entering the full $131,864.88 asset freeze against all Defendants would act in aid of the equitable relief sought.

Judge McCarthy notes that she would still recommend entering the preliminary injunction if Plaintiff had instead moved under Federal Rule of Civil Procedure 64. (R&R 13.) Rule 64 provides that in federal court, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Rule 64 thus gives a federal court access to the

15

prejudgment remedies afforded by the state in which the court sits. *See Ally Bank v. Reimer*, No. 09-CV-2795, 2010 WL 446025, at *2 (E.D.N.Y. Jan. 29, 2010); *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318–19 (E.D.N.Y. 2009); *Algonquin Power Corp.*, 2000 WL 33963085, at *6. New York State does offer some prejudgment remedies that may be available to Plaintiff here. *See, e.g.*, N.Y. C.P.L.R. § 5229 ("[U]pon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained with the same effect as if a restraining notice had been served upon him after judgment."); *id.* § 6201 ("An order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled . . . to a money judgment against one or more defendants . . . ."). But Plaintiff has not sought relief under Rule 64, (*see* Mot. for PI 1), and this Court declines to construe Plaintiff's application, which cites no state law, as an application under Rule 64, *see Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 161 (1st Cir. 2004) ("[T]he mere fact that state attachment standards remain applicable in federal courts under Rule 64 tells us nothing about the wonted operation of Rule 65. [The plaintiff] is not seeking an attachment under Rule 64 . . . .").

Accordingly, the Court is satisfied that it has equitable power to freeze Defendants' assets, though the preliminary injunction must be modified to encompass only those claims for which equitable relief is sought.

### 2. Sufficiency of Objections

The Court now turns to Plaintiff's argument that because Defendants' objections merely repeat arguments already made to Judge McCarthy, the Court need not consider them. The Court disagrees.

Plaintiff is correct that district courts may choose not to entertain a party's objections if they merely rehash arguments made in the original briefing to the magistrate. *See Vega*, 2002 WL 31174466, at *2 (refusing to consider objections because the claimant had "simply rearranged many portions of his original brief" and "[i]n fact, . . . [the claimant] cite[d] back to his original brief in support of his renewed objections); *Ortiz*, 558 F. Supp. 2d at 451 ("It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." (internal quotation marks omitted)). This, however, is not such a case. While some points made in the original pleadings reappear in Defendants' objections, the objections themselves are directed at specific findings and recommendations of Judge McCarthy. (*See* Defs.' Objs.) Put differently, Defendants did not "simply rearrange[] . . . portions of [their] original brief," *Vega*, 2002 WL 31174466, at *2, or "attempt to relitigate the entire content of the hearing before the Magistrate Judge," *Ortiz*, 558 F. Supp. 2d at 451 (internal quotation marks omitted). Accordingly, the Court is obliged to undertake a de novo review of those portions of the R&R to which Defendants have specifically objected.

### 3. Defendants' Objections

#### a. Business and Living Expenses

Defendants first object that Judge McCarthy erred both in calculating the actual amount of personal living expenses and in failing to allow Defendants to withhold an additional amount for business expenses.

Defendants argue that Judge McCarthy improperly calculated their monthly living expenses and point to their interrogatory responses as evidence. (*See* Defs.' Interrog. Resps.)

Judge McCarthy reviewed Defendants' interrogatory responses and the bank account information provided under seal, (*see* Decl. of Kelly B. Gallagher in Supp. of Mot. for Assessment of Damages ("Gallagher Decl.") Ex. J ("Defs.' Bank Records") (Dkt. No. 117)), to determine that Defendants were entitled to retain, monthly, $2,167.85 for mortgage payments; $1,000 for utilities; $1,218 for health insurance; $600 for food; $300 for gas, tolls, and other car maintenance; and $500 discretionary allowance to make minimum payments on outstanding debts, (R&R 12). Having reviewed the documentary evidence de novo, the Court concludes that Judge McCarthy's suggested allotments for reasonable monthly expenses are appropriate, with one minor modification.[2]

First, although Judge McCarthy did not explain why she recommended allowing Defendants only $2,167.85 for mortgage payments, (*id.*), instead of the $2,941 requested by Defendants, (Defs.' Interrog. Resps. at 9–10), a review of the bank records indicates that Defendants do not actually pay $2,941 a month in mortgage payments, and that the mortgage payments, to the extent they are made, are closer to $2,200, (*see* Defs.' Bank Records). Having conducted a de novo review of the record, the Court concludes that $2,200 a month is an appropriate amount for Defendants to pay toward their outstanding mortgages.

Second, a close inspection of the bank records reveals that Defendants' monthly cost for car maintenance, tolls, and gas rarely exceed $300, and never do so by more than a few dollars. (*See* Defs.' Bank Records.) And there is no evidence suggesting that Defendants paid for these expenses with cash, which would not necessarily be reflected in the bank records. There is thus no support in the record for the $800 monthly allotment for automobile expenses requested by

---

[2] Judge McCarthy allotted the full requested amounts for utilities ($1,000), health insurance ($1,218), and food ($600). (*See* R&R 12.) The Court presumes that Defendants do not object to those amounts.

Defendants, and the Court therefore agrees with Judge McCarthy that $300 a month is the appropriate figure.

Third, the bulk of Defendants' remaining claimed monthly expenses relate to outstanding debt (credit card payments and student loans) whose monthly payments total $1,711. (*See* Defs.' Interrog. Resps. at 9–10.) Again, the bank records do not support this request—the account statements provide no indication that monthly payments are being made on the student loans listed in Defendants' interrogatory responses, and the credit card payments are made only sporadically. (*See* Defs.' Bank Records.) In light of this evidence, the Court concludes that $500 a month is a reasonable amount to set aside for additional debt payments and other emergencies.

Defendants next contend that Judge McCarthy erred in failing to exclude business expenses from the asset freeze. (*See* Defs.' Objs. 2.) Defendants argue that if they are unable to fund the business, they will have no income and will be forced to rely on public assistance. (*See id.*) This issue is moot. On February 6, 2013, the Court entered a contempt order (the "Contempt Order") against Defendants, directing them to "begin the process of canceling all current contracts with their manufacturers/clients." (Contempt Order 2 (Dkt. No. 32).) The Court held in its opinion on the motion for partial summary judgment that the Contempt Order did not order Defendants merely to cancel and then reinstate their contracts, but rather it required Defendants to cease their operations. (Op. on Partial Summ. J. 28 n.34.) In light of the Contempt Order, there is no occasion for Defendants to spend money on the operations of the business.

Defendants protest that such a restriction is inappropriate because this is not a "non-compete" case. (Defs.' Objs. 7.) That is true, but while Defendants will be free to compete with

19

Plaintiff after the termination of this case, the Court made clear in the Contempt Order and the opinion on partial summary judgment that Defendants cannot be trusted to operate their business during this proceeding without infringing on the rights of Plaintiff. It is through Defendants' own misconduct and repeated disregard of the Court's orders that they find themselves in this position.

Accordingly, having conducted a de novo review of the issues identified in Defendants' objections, the Court modifies the monthly amount to be excluded from the asset freeze to $5,818.

### b. Reinstatement of Contracts

Defendants next object that Judge McCarthy erred in concluding that Defendants reinstated contracts with any of Plaintiff's past clients. (*See* Defs.' Objs. 3.) Defendants misstate the record—Judge McCarthy merely quoted, accurately, from the Court's opinion on partial summary judgment, where the Court noted that "Defendants have violated the Contempt Order by receiving commissions and other funds from the contracts they have reinstated and by failing to pay those funds into the escrow account." (Op. on Partial Summ. J. 28.) Nowhere did the Court suggest that Defendants had reinstated contracts with Plaintiff's former clients. The Court, in fact, addressed the precise contention made by Defendants again here, namely, that the Contempt Order covered only those accounts related to Plaintiff's former clients. (*See id.* at 28 n.33.) But Defendants were wrong at summary judgment and they are wrong here—the Contempt Order is clear on its face that it is not restricted to only those revenues traceable to Plaintiff's former clients. That Defendants continue to press this tired argument after the Court rejected it in its opinion on partial summary judgment demonstrates either neglect or outright defiance. Either way, the Court is not persuaded that the R&R is infirm for having accurately

20

quoted this Court's conclusion, which is not up for reconsideration on this motion, that

Defendants violated the Contempt Order by reinstating contracts they had previously terminated.

### c. Irreparable Harm and Frustration of Judgment

Defendants' final two objections to the R&R are essentially the same: that Judge

McCarthy erred in concluding that Plaintiff will suffer irreparable harm if the preliminary

injunction is not entered. (Defs.' Objs. 4–7.) Defendants point to their income during the last

four years as evidence that they will be able to pay any judgment rendered against them. (*Id.* at

4.) As noted above, though monetary harm will not ordinarily qualify as irreparable harm, such

harm may be irreparable where there has been a "showing of intent to frustrate any judgment on

the merits." *Sea Carriers Corp.*, 2006 WL 3354139, at \*5 (citing, inter alia, *Republic of

Phillipines*, 806 F.2d at 356; *In re Feit*, 760 F.2d at 416). At his deposition, Scherer admitted

that all of the money paid to Defendants by their clients since October 2012 has been spent. (*See*

Letter from Kenneth S. Rones, Esq., to Court (Apr. 20, 2016) Ex. B ("Scherer Dep."), at 165

(Dkt. No. 110).) And only a small fraction of the revenue earned has been deposited into escrow

in accordance with the Contempt Order. (*See* Apr. 29 Pl. Ltr. 2 ("Defendants have made a single

deposit into the escrow account in the amount of $16,691.99.").) Indeed, Defendants have made

little effort to defend their actions, only reiterating the refrains, addressed above, that this is not a

"non-compete" case and that they interpret the Contempt Order differently from Plaintiff (and

the Court). (*See* Defs.' Objs. 5–7.) The record thus belies Defendants' claim that they "sought

proactively to avoid further violation of this Court's orders." (*Id.* 6.) If there is any doubt that

Defendants have intended to frustrate a judgment on the merits, the Court need only look to

Scherer's deposition, wherein he testified that he knew his erroneous interpretation of the

Contempt Order was contradicted by the Court's opinion on partial summary judgment, and yet still did not deposit the money covered by the Contempt Order. (*See* Scherer Dep. 170.)

Defendants insist that their actions were taken in good faith based on the representations and inaction of Plaintiff. (*See* Defs.' Objs. 6–7.) But it is not the responsibility of Plaintiff to police Defendants' misconduct—Defendants have an obligation, independent of any diligence or representations by Plaintiff, to obey the orders of the Court. It is inappropriate to point the finger at the adversary when it is Defendants who have unapologetically defied the orders of this Court.

The Court has little confidence that if Defendants are allowed to continue to spend their revenues freely, sufficient funds, if any, will be available for collection by Plaintiff by the time judgment is entered. The hardship imposed on Defendants by this preliminary injunction is not insignificant, but that hardship must be weighed against the considerable prejudice and frustration they have imposed on Plaintiff by their actions. The preliminary injunction is not appropriate merely because partial summary judgment has been rendered against Defendants; it is appropriate because Defendants, losing on the merits, have consistently acted in a way contrary to the rights of Plaintiff.

### 4. Posting of Bond

The R&R makes no mention of whether Plaintiff must post a bond to secure the preliminary injunction. However, Rule 65 stipulates that the Court may issue a preliminary injunction "only if the movant gives security in an amount that the [C]ourt considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose of the security is to "cover any damages that might result if it were later determined that the applicant was not entitled to an injunction." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 626–27 (S.D.N.Y. 2010)

(alterations and internal quotation marks omitted) (quoting *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1055 (2d Cir. 1990)). Rule 65 gives the district court "wide discretion to set the amount of a bond." *Corning, Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (internal quotation marks omitted). The Court should consider both the likelihood of the enjoined party prevailing on the merits and the harm suffered by the enjoined party. *See Scarsdale Cent. Serv. Inc. v. Cumberland Farms, Inc.*, No. 13-CV-8730, 2014 WL 2870283, at *6 (S.D.N.Y. June 24, 2014); *see also Rex Med.*, 754 F. Supp. 2d at 627 (considering the likelihood of the enjoined party prevailing on the merits).

Having considered the relevant factors, the Court concludes that $50,000 is an appropriate bond for Plaintiff to post. Defendants' business will undoubtedly suffer from the injunction, and regaining lost customers after the conclusion of judgment will entail time, effort, and money. As explained, however, Defendants' current situation is a consequence of their own misconduct, and there is no suggestion by either party that Defendants will ultimately prevail on the merits. A $50,000 bond is appropriate to compensate for the harm Defendants will suffer without overburdening Plaintiff.

## II. Conclusion

Having reviewed the remainder of the R&R, the Court concludes that there is no clear error.

For the foregoing reasons, it is hereby ordered that:

1.      Defendants are enjoined from concealing, converting, selling, encumbering, transferring, or otherwise dissipating any assets in the bank accounts identified in Exhibit J to the April 29, 2016 Declaration of Kelly B. Gallagher (Dkt. No. 117), except that Defendants may jointly withdraw up to $5,818 per month for living expenses.

23

2.     Defendants are enjoined from concealing, converting, selling, encumbering, transferring, or otherwise dissipating any other assets in which they have an ownership, legal, or beneficial interest, which may be subject to a monetary judgment rendered in favor of Plaintiff.

3.     Defendants shall deposit into an escrow account held by McCarter & English, LLP, all commissions or other funds they have received from any manufacturers/clients since October 1, 2012 or receive in the future, and McCarter & English, LLP shall hold such funds in escrow until further order of this Court.

4.     Defendants may divert commissions or other funds they have received from any manufacturers/clients since October 1, 2012 or receive in the future to the bank accounts identified in Exhibit J to the April 29, 2016 Declaration of Kelly B. Gallagher (Dkt. No. 117) only as necessary to pay living expenses in the amount of $5,818 per month as set forth above.

5.     Once Defendants have deposited a total of $131,864.88 into the escrow account held by McCarter & English, LLP, the restrictions in paragraphs 1 and 2 above shall be lifted.  In accordance with the Contempt Order entered by this Court on February 6, 2013 (Dkt. No. 32), Defendants must still continue to deposit into the escrow account all commissions or other funds they have received from any manufacturers/clients since October 1, 2012 or receive in the future, less any amounts necessary to pay living expenses in the amount of $5,818 per month.

6.     Plaintiff shall post a bond of $50,000 within one week of the date of this Order.

The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 113.)

SO ORDERED.

Dated:      October 18, 2016
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE